Wiley & Wald, for Defendant in Error.

---

(Hamilton County Common Pleas.)
January, 1901.

IN RE HABEAS CORPUS for THOMAS MILLER.

---

IN RE HABEAS CORPUS for HERMAN HOLJES.

---

IN RE HABEAS CORPUS for JULIAN J. RAUH.

---

IN RE HABEAS CORPUS for GEORGE HAFER.

---

*Notaries and their power in taking depositions—*
(1). Depositions may be taken before a notary public "immediately after service of summons;" and this rule applies to the taking of depositions of the opposing party.
(2). A notary has no power to determine whether a question which a witness has refused to answer is relevant or competent. His only recourse is to commit the witness to jail, leaving to a court of competent jurisdiction the determination of the question of relevancy upon application for release by habeas corpus.
(3). A notary has power to issue a subpoena duces tecum, and to punish as for contempt for disobedience of the writ.
(4). Testimony taken down by a stenographer in the absence of the notary does not constitute a valid deposition, although it might be used by consent of the parties as statement of fact; and one who has given a deposition which was invalid by reason of the absence of the notary, may be compelled to submit to a second examination.
(5). If a witness and the stenographer differ as to the correctness of answers taken down, the proper practice is to add the correction of the witness to the deposition, and leave the question to the jury to determine whether credence shall be given to the witness or to the stenographer.

---

SPIEGEL, J.

The aforesaid cases come into the court of common pleas upon a writ of habeas corpus, praying for the release of the different petitioners from the custody of a constable, to whom they had been committed by notaries. The petitioner, Julian J. Rauh, had refused to produce the books of his firm upon a subpoena duces tecum; the petitioner, Thomas Miller, had refused to answer because he was a party to the action, a resident of Cincinnati, in good health, had no intention of removing, would be present at the trial, and because his examination was for the purpose of learning what his testimony would be on the trial when called as a witness on his own behalf; the petitioner Herman Holjes had refused to answer on the same grounds as Mr. Miller, and further because he was not a party to the case, but only an ordinary witness; the petitioner George Hafer had refused to answer because he had already given his deposition, covering seventy-eight pages of legal cap, and for refusal to sign the same he had been committed to jail and released on a writ of habeas corpus.

It will be seen that nearly every question, underlying the authority of notaries to take depositions in our state, is raised in these cases; and it becomes necessary, before deciding the separate questions raised in each case, to determine the general powers of a notary in the taking of depositions. An Ohio notary is an officer appointed by the governor for the county in which he resides, upon a certificate from a judge of the court of common pleas, circuit court or supreme court, stating that the applicant is of good moral character, and possessed of sufficient qualifications and ability to discharge the duties of the office. His powers and duties are contained in sections 110-123 of the Revised Statutes.

Section 118 authorizes him to administer oaths and to take and certify depositions; section 119 provides that in taking depositions he shall have the same power to compel the attendance of witnesses and to punish them for refusing to testify, which is by law vested in justices of the peace. The latter provisions are contained in sections 6541 and 6542, empowering justices to impose a fine of five dollars on contumacious witnesses.

The right to take depositions in our state is given by section 5261, which provides that the testimony of witnesses may be taken by affidavit, by deposition or oral examination.

Section 5265 provides as follows:

"The deposition of a witness may be used only in the following cases:

1. Where the witness does not reside in, or is absent from the county where the action or proceeding is pending, or, by change of venue is sent for trial.

2. When the witness is dead, or, from age, infirmity or imprisonment is unable to attend court.

3. When the testimony is required upon

a motion, or, when the oral examination of the witness is not required.''

The section following this, 5266, provides that:

''Either party may commence taking testimony by deposition at any time after service of summons upon the defendant ''

The first proposition submitted in these cases is, that the provisions of section 5265 be construed together with section 5266, so that the latter section can only become effective when the witness shall be absent from the county, or when the witness from age, infirmity or imprisonment shall be unable to attend court. This construction would apply alike to all witnesses, whether they be adverse parties or strangers to the action. The attention of the court is called to the fact that many, if not the majority of depositions taken, are not used upon the trial, and are simply a fishing expedition for evidence. Even were this true, this would not give the court the right to judicially legislate away the effect of a law solemnly passed by the general assembly, unless the legal canons of interpretation justified it.

Section 5266 provides, not when a deposition may be taken, but when, after having been taken, it may be read; the following section provides when a deposition may be taken, not used, namely: immediately after service upon the defendant. The language is plain and is not open to any construction whatsoever. If the power thus conferred is abused, the remedy lies with the general assembly, not with the court.

The next question raised is that the mode thus provided for taking testimony before the trial of the case, does not apply to the adverse party, and my attention is called to the construction of Judge King, of the sixth circuit court, of section 5243 in the habeas corpus case of L. M. Humphrey, 14 C. C., 517. I have carefully read this case, and with the greatest respect for the eminent judge rendering the opinion, I do not see how the right to take the deposition of an opposing party depends wholly upon the construction of section 5243, only, which provides that a party may be examined as if under cross-examination, at the instance of the adverse party, either orally or by deposition as any other witness. The right to take the testimony of all witnesses, including parties, by deposition rests upon section 5261; and the section making all persons, except those of unsound mind or children under ten years, competent witnesses, rests upon section 5240. And simply construing statutes, and not legislating, how can section 5243 be construed otherwise than as in pari materia with the sections I have cited, declaratory of the right thus given, with the additional power conferred to examine adverse parties as if under a cross-examination, with the right of rebuttal? Also here the same reasoning is addressed to me, showing the unfairness of compelling an adverse party to testify before trial, thus possibly enabling the party examining to concoct some defense. Aside from the fact that this argument goes to the abuse of the power, and not to its legality, and would be properly addressed to the legislature, and not to the court, we should, however, remember, that this mode of examining the adverse party is but a substitute for the ancient chancery practice of interrogatories to bills in chancery and for bills of discovery, by which the defendant was made to disclose what he knew for the benefit of the other party, before other testimony was taken. Under the old system all bills were, in one sense, bills of discovery through the interrogatories annexed to them. (Story Eq. Jur., sec. 689); but the bill of discovery proper had for its sole object the compelling of the adverse party to give evidence to be used against himself in a suit at law then pending or about to be brought, and if the suit was then pending, it was stayed until the disclosure was made. This being in advance of the final hearing, gave the opposite party the opportunity to investigate the truth of the statements and take testimony in respect thereto. In several of our states, before parties to suits were empowered by law to testify, bills of discovery were supplanted by statutes allowing the adverse party in actions at law to be examined on interrogatories before the trial, and if the party to be examined did not answer at the appointed time, he was proceeded against by contempt, or his pleading struck out, or the case was continued so that he could be examined before the trial.

Nowhere is there a trace of an intention to give up the benefits of such discovery. When the statutes admitting parties to testify orally or by deposition were passed, some of the states retained the old methods of procuring the examination of an adverse party before the trial, and the courts in those states held that the bill of discovery, and the examination by deposition, were concurrent, and a party might interrogate his adversary by either method (44 Is., 805, 20 N. J. Eq., 79). In our own state Judge Spear says: ''All the aid which a suit for recovery (Misprint, meaning discovery) would give is now given by our own code in the case at law itself. The party may attach to his pleading interrogatories, which, so far as pertinent, the other party is bound to answer, and these answers may be used by either party as evidence. He may also take the deposition of the opposite party, or put him on the stand as a witness at the trial. The doctrine and rules concerning the subject matter of discovery established by courts of equity are believed to be still in force and to control the same matters in the new procedure, but the bill of discovery as a separate action is practically obsolete in this state.'' (45 O. S., 366.)

The New York court of appeals, 69 New York, 120, in commenting on the right to

examine the adverse party before trial by this simple modern process, says: "It is suggested that it is a power liable to abuse in the use it may be put to in harrassing antagonists in inquisitorial inquiry. It is not a sound argument which reasons against the existence of a power from the possibility of the abuse of it. And it is not to be denied that the prudent and legitimate use of it will not, of necessity, be found vexatious, and that it has heretofore proved of benefit to honest suitors, and a great aid to justice. If the power which the court of chancery had under the former practice, was exercised without vexation to defendants, why may not the same power be benignly exerted by the courts at this day? * * * It enabled a suitor to procure the precise information, if it lay in the mind of his adversary, on which he might frame his pleadings in his action for relief; might select the persons whom he should make defendants, and procure the knowledge of facts which would qualify him to come to trial well prepared."

The object of all trials is to ascertain the truth, so that human justice may be safely administered. Undoubtedly, it is disagreeable to a party, and much more so to a simple witness, to sacrifice his time in testifying twice or more on the same matter. But this is no more than the exercise of the state's police power upon the personal rights of individuals, the sacrifice of but a small portion of a person's comfort for the benefit of the whole in the furtherance of the commonwealth's administration of justice; no more than its power of taxation and eminent domain, where it interferes with a person's property rights. The adverse party may possibly call it a process of inquisition, and the depositions, sham depositions; but then, this is the same quarrel which our ancestors had, when, as adverse parties, they were compelled to disclose their knowledge of the facts, in chancery practice, in bills of discovery and interrogatories to other bills, a practice which has been commended by every writer on equity jurisprudence, because, as Judge Story puts it: "It narrows the chance of successful evasion."

I have thus passed upon the questions whether the petitioners, Messrs. Thomas Miller and Herman Holjes, must give their depositions before the notary. The further one, whether their commitment by the notary was illegal, is not an open question in Ohio, but stare decisis.

In De Camp v. Archibald, 50 Ohio St., 618, Judge Minshall lays down the following rules which are contained in the syllabus:

"1. The power of a notary public in taking depositions to punish a contumacious witness is not limited by section 119, Revised Statutes. to the powers in that regard conferred on justices of the peace by sections 6541 and 6542, Revised Statutes.

By being included in section 5269, Revised Statutes, he has the further power of imprisoning for contempt conferred on "an officer" taking depositions by sections 5252 and 5254, Revised Statutes.

"2. The power conferred by sections 5252 and 5254, Revised Statutes, on a notary, or other officer, in taking depositions, to commit a witness to the jail of the county for refusing to answer a question, is not judicial in the sense of the constitution, conferring all judicial powers upon the courts of the state.

"3. Where the question propounded involves no question of privilege on the part of the witness, it is his duty to answer, if ordered by the notary to do so. The question of its competency is a matter for the determination of the court on the trial of the action in which the evidence is taken; and if he refuses to do so when ordered, he may be committed, as a contumacious witness."

This being the law of Ohio, under what circumstances then is the commitment of a witness illegal? Would it be only when the witness refuses to answer a privileged question, and not an irrelevant or incompetent one? Clearly not, as Judge Shauck, in ex parte Malcom Jennings, 60 Ohio St., 328, has clearly pointed out:

"It is familiar that an objection to the competency of the evidence to be elicited, when interposed by a party to the action in which the deposition is taken, can not be either suspended or overruled, by the officer. In such case the question of competency is for the court. But it seems quite consistent with the purpose for which depositions are taken that a witness may refuse to make disclosures, which would operate to his personal prejudice without aiding the court in determining the rights of the parties, by reflecting either upon the issues in the case, or upon the credibility of the witness. Accordingly, the settled law upon the subject is as stated in Church on Habeas Corpus, section 319: 'The law has not invested such officers (notaries public) with arbitrary and omnipotent power, to compel a witness to answer all questions however incompetent, irrelevant, immaterial or inadmissible. A refusal to answer such questions is not necessarily contempt. To have power to commit for contempt, the notary must exercise his functions substantially in the manner, and under the circumstances prescribed and contemplated by law. It has, therefore, been held that a witness will be discharged on habeas corpus where he has been committed for contempt by a notary public for failing or refusing to produce papers and testimony that are incompetent and inadmissible.' " Profatt on Notaries, section 31; In re Beardsley, 37 Kas., 666; Ex parte Krieger, 7 Mo. App., p. 637.

"The conclusions stated must be sound unless the officer taking the deposition is released from limitations which the law

imposes upon the authority of the judge before whom it is to be read, since a witness examined in court is not guilty of contempt in refusing to answer an incompetent question. Ex parte Zeehandlaar, 71 Cal., 238; People ex rel. Kelly, 24 N. Y., 74. In De Camp v. Archibald, so confidently relied upon to justify this imprisonment, it was clearly pointed out in the opinion that the question which the witness refused to answer was competent. Indeed it does not seem to have been finally determined in any case that the personal liberty of the citizen is of so little importance that it should yield to a desire to gather food for idle gossip.''

Under these decisions it seems to be clear, that the notary has no power, absurd as it may seem, having been appointed because he possesses sufficient qualifications and the ability to dischaige the duties of his office, to determine whether the question, which the witness has refused to answer, is relevant or competent. He may properly pass upon the question whether it is a matter of privilege to the witness, without being compelled to send him to jail. I am clear, however, that in the former case, he has no recourse, no matter how justified a witness may be in refusing to answer, but to send him to jail as a contumacious witness, leaving to a court having the power to grant a writ of habeas corpus, the determination of these questions. It is true that Judge Taft when upon the superior bench, in Shaw v. The Ohio Edison Installation Co., 17 W. L. B., 274, following the chancery practice, decided that notaries might be allowed to consult the court, and obtain an opinion as to the relevancy and competency of a question put to a witness whose deposition is being taken. This would be the proper practice were the notary an officer of the court, as the master or referee, appointed by the court of chancery, was to the latter court. But the notary is not. He is an independent officer, appointed by the governor, has no connection with and is not under the control of the courts, nor would he be bound by the instructions of the court, but could totally disregard them. The only way, therefore, in which a witness can hope to have his rights established is to go to jail, and then have counsel sue out a writ of habeas corpus, bring his body before the court, and have the latter pass upon the propriety of the question. As Judge Taft so succinctly put it: "The regular and statutory mode of obtaining the opinion of the court on such a state of facts (refusal of witness to answer) is for the notary to commit the witness for contempt under section 5252, Revised Statutes; the witness may then make an application to the court for his release under section 5255, Revised Statutes, and in considering the application, the court must review and pass upon the ground of commitment.''

Such an anomaly in our jurisprudence requires correction. Depositions under our law are a proper mode of testimony, and either the officer, to whom is delegated the power of taking them, ought to be well versed in the law, and have the power of passing upon the competency of the testimony, or the road to the opinion of a court upon such competency ought not to lead through a jail.

The case of the petitioner, Mr. Julian J. Rauh, presents the question, whether a notary has the power to issue a subpoena duces tecum. Section 119 of the Revised Statutes provides that a notary in taking depositions shall have the same power to compel the attendance of witnesses, which by law is vested in justices of the peace. Section 6537 of the justice's code, provides, that any justice may issue subpoenas to compel the attendance of witnesses to give evidence on any trial pending before himself, or for the purpose of taking depositions, or to perpetuate testimony. This is the only provision in the justices' code for issuing subpoenas. The general provisions for issuing subpoenas are contained in title 1, division 3, chapter 3 of part third, of the Revised Statutes, under sectional numberings, 5246, 5247 and 5248, reading as follows:

"Section 5246. The clerks of the several courts and judges of the probate courts, shall, on application of a person having a cause or other matter pending in a court, issue a subpoena for witnesses, under the seal of the court, inserting all the names required by the applicant in one subpoena, which may be served by the sheriff, coroner or any constable of the county, or by the party, or any other person. And when a subpoena is not served by the sheriff, coroner or constable, proof of service shall be shown by affidavit, but costs of such service shall not be taxed.''

"Section 5247: The subpoena shall be directed to a person therein named, requiring him to attend at a particular time and place, to testify as a witness; and it may contain a clause directing the witness to bring with him any book, writing or other thing under his control, which he may be compelled to produce as evidence.''

"Section 5248: When the attendance of a witness before an officer authorized to take depositions is required, the subpoena shall be issued by such officer.''

Section 5349: The subpoena shall be served either by reading, or by copy delivered to the witness, or left at his usual place of residence; but such copy need not contain the name of any other witness.''

Further sections under this subdivision authorize punishment by any court or officer of any contumacious witness.

Section 6705 of the justices' code provides that the provisions of title 1 of part 3 of the Revised Statutes (containing the sections above cited), which are in their nature applicable to the proceedings before justices, and in respect of which no special provision is made in this title

(referring to the powers of justices) are applicable to the proceedings before justices of the peace.

In Roberts v. Briscoe, 44 Ohio St.,, 600, Judge Dickman lays down the following rule of interpretation:

"When we consider the enlightened progress made through the code in relaxing the rigid rules as to the competency of witnesses, we can not but be impressed with the liberal spirit, and inclined, in order that justice may not fail, to apply to it such canons of interpretation as will, when not plainly violating the legislative intent, favor the admission rather than the exclusion of testimony. * * * The questions under consideration are in pari materia. They are sections of a revised code upon one subject, and are to be construed as a single statute, and treated as a single statute. It is to be so construed that all its provisions may be harmonized, if possible."

We have already seen that Judge Minshall, in DeCamp v. Archibald, lays down the rule that section 119 does not limit the powers of an officer taking depositions; but that the rules governing the taking of depositions by any court or officer are found in the sections above cited by me, under subdivision 2 of chapter 3, division 3, title 1, of part third of the Revised Statutes. Applying, then, the rule of construction provided in section 6705 of the justices' code, which undoubtedly authorizes justices of the peace to issue sub poena duces tecum, and which is made applicable by section 119 to notaries public; applying further the rule of construction in pari materia, which applies to all sections of part third of the Revised Statutes, entitled "Remedial"; and, finally, applying the canons of construction laid down by our supreme court, including notaries among the officers named in the sections relating to depositions wherein subpoenas duces tecum are undoubtedly authorized, I must hold that a notary has full power to issue a subpoena duces tecum, and punish for contempt a witness disobeying the writ. In thus deciding, I do not forget the decision of Judge Mc-Math of the Cuyahoga common pleas court, in re Elias Sims, in the year 1879, (4 W. L. B., 457), wherein he holds that a notary has no right to issue a subpoena duces tecum; but I also do not forget that Judge McMath did not have the light of the later decisions of our supreme court, cited by me, which quite possibly might have changed his holding. At any rate, I have tried to follow the rule laid down by Chancellor Kent in his Commentaries, (vol. 1, 461): "In the exposition of a statute the intention of the law maker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief

felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion."

I come now to the case of the petitioner, Mr. Geo. Hafer. On the 12th day of October, 1900, he gave his deposition as a defendant in a cause then pending, before a notary, under a stipulation between counsel, that the deposition might be taken by the stenographer in short hand, and thereafter transcribed by her, said transcription to be the same as though taken in long-hand by the notary. Thereafter the petitioner refused to sign the deposition, thus transcribed, upon the ground that some of the answers which he gave to questions propounded by opposing counsel were not correctly taken down. The notary, upon the advice of the stenographer that the answers were correctly reported, refused permission to have the corrections made, and as the petitioner still refused to sign, had him committed to jail for contempt. A writ of habeas corpus was sued out before me, and upon the hearing both counsel agreed that the stipulation which I have quoted, meant and had the effect, that the notary might absent himself from the hearing, which was had before the stenographer, a very amiable young lady. The notary stated that he was not present when the questions were put and answers given by the petitioner, to the correctness of which he latter objected. I had no recourse but to order the release of Mr. Hafer from custody upon his own recognizance until further order of the court; for it seemed to me an elementary rule of law that no officer entrusted with the power to peremptorily punish for contempt, without trial, could do so, unless the contempt were committed in his presence. But I also stated that I would hold the case, as I did not believe that a stipulation, whether oral or written, which dispensed with the presence of a notary, was legal, and that if the question of the legality of such a deposition, even if properly signed and certified by the notary, ever arose in court, the same could be admitted at all. Thereupon the notary served a new order upon the petitioner in pursuance of notice from counsel to take said deposition, to appear and testify on November 3rd, 1900, which the latter refused to do upon the ground that he had already given his deposition and was ready to sign it when properly corrected. If I am wrong in believing that, owing to the absence of the notary, no legal deposition was taken, then the question presents itself whether a witness must sign his deposition upon the order of the notary when he claims that his answer was incorrectly taken down. Section 5275 of the Revised Statutes provides that the deposition of a witness may be written by the officer, the witness, or some disinterested person. The witness has a right to have the deposition read to him before signing, in order that errors may be correct-

ed, if any have occurred. If the witness and the stenographer shall differ as to the correctness of the answer, then this is a question of fact, to be determined as other questions of fact are, not by the peremptory order of the notary, but by the trial court, and the proper practice, is to have the correction of the witness added to the deposition, and let the jury determine upon the trial of the cause, if the question becomes material, to whom credence should be given, whether to the stenographer, who may testify in rebuttal as to the correctness of the transcript, or to the witness disputing the same. In the case at bar, however, before the witness can be ordered to sign the deposition with his correction, I must first determine whether there is any legal deposition at all to sign. The absence of the notary during the hearing being admitted by counsel, under a belief of right that his presence might be waived, the question must be determined whether this can be legally done. The maxim: Modus et conventio vincunt legem, has been incorporated into our system of jurisprudence, and does not only apply to contracts, but to any right in favor of any party, whether created by contract, by statute or by the constitution. He may waive any right created for his protection, and this necessarily includes regulations concerning the procedure and practice of the courts, when not going to the jurisdiction. But this right applies only to the waiver of a rule or law made solely for the benefit and protection of the individual in his private capacity, and has a limit, which finds its expression in the civil law maxim: privatorum conventio jure publico non derogat, for when public policy or public right requires the observance of the provisions of a rule or statute, it cannot be waived by an individual. Private compacts are not permitted either to render that sufficient, between themselves, which the law declares essentially insufficient, or to impair the integrity of a rule necessary for the common welfare.

Section 5269 of the Revised Statutes makes a notary one of the officers authorized to take depositions. Section 5275 provides that the deposition shall be written by the officer, or in his presence by the witness, or some disinterested person. Section 5280 prescribes that the officer shall annex to the deposition a certificate, showing, among other things, that the deposition was written and subscribed in the presence of the officer certifying thereto. Judge Cooley his work upon "Constitutional Limitations", page 492, says, that while the law always encourages voluntary arrangements, nevertheless "if the parties can not confer jurisdiction upon a court by consent, neither can they by consent empower any individual other than the judge of the court to exercise its powers. Judges are chosen in such manner as shall be provided by law;

and a stipulation by parties that any other person than the judge shall exercise his functions in their case would be nugatory, even though the judge should vacate his seat for the purpose of the hearing."

Now, it is true that a notary possesses no judicial powers in the sense in which this phrase is ordinarily used. Judge Minshall in DeCamp v. Archibald has said that the term, "judicial power" as used in the constitution, is not capable of a precise definition. It is included in the power to hear and determine, but does not exhaust the power. That it embraces the hearing and determination of all suits and actions, whether public or private, there can be no doubt. But we think that it is equally clear that it does not necessarily include the power to hear and determine a matter that is not in the nature of a suit or action between parties. * * * The taking of depositions is not only a very ancient, but, in many instances a necessary method of obtaining evidence to be used in the trial of a cause. Without such means of obtaining evidence justice could not in many cases be done, as the attendance of the witness at the trial could not be secured; and if the witness can not be compelled by the officer taking the deposition to answer a proper question, the rights of a party might be sacrificed to the perversity of the witness. In states where, as in our own, the power is conferred by statute, it has frequently been exercised by notaries and sustained by the courts."

I have thus fully cited the statutes as well as the opinion of Judge Minshall, that I might determine what the public policy of our state is with reference to these officers, and I can only hold, that the power with which the law has clothed them, in the taking of depositions, whether judicial or in aid of justice, can not be delegated by consent of counsel to a stenographer. No matter what the power may be called, it is one which commands the obedience of witnesses to all lawful orders issued by notaries, and it demands the presence of the officer, both to lend dignity to the proceeding in aid of the administration of justice, as authorized by the laws of the state, as well as that he may pass, upon all, as far as within his power, questions arising during the hearing. While the state will not interfere in the voluntary arrangements of parties, still they are only voluntary, and testimony thus taken in the absence of the notary may become an agreed statement of fact, when properly signed; but the state will not lend its aid to enforce the signature of the witness, to what it is not, namely: a deposition. To rule otherwise, would be to aid and abet a fraud upon the court, especially

should the notary, as is done in nearly all depositions, affix his certificate, that the testimony was reduced to writing in his presence. This does not necessarily mean that the notary may not leave the room at any time while the witness gives his testimony; like all rules of action, it must be reasonably interpreted.

Deciding thus, I hold that the former testimony given by Mr. Hafer is not a deposition, and that, therefore, he must obey the order of the notary and submit to a second examination.

The writ of habeas corpus in all of these cases is refused, and orders may be drawn accordingly.

C. W. Baker, for Petitioners Thomas Miller, H. Holjes and Julian J. Rauh.

Kramer & Kramer, for Constable.

Harmon, Colston, Goldsmith & Hoadly, for George Hafer.

Sidney G. Stricker, for Constable.